IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


CORENA M. WOLFF                                                    PLAINTIFF

                    v.                    Civil No. 10-2187

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                    DEFENDANT

**MEMORANDUM OPINION**

I.      **Factual and Procedural Background**

        Plaintiff, Corena M. Wolff, brings this action seeking judicial review, pursuant to 42 U.S.C.

§ 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner")

denying her applications for disability insurance benefits ("DIB") and supplemental security income

("SSI") under Titles II and XVI of the Social Security Act ("the Act").

        Plaintiff protectively filed her applications on March 24, 2008, alleging a disability onset date

of March 1, 2008, due to fracture of the left tibia status-post surgery and depression.  Tr. 15.  On the

alleged onset date, Plaintiff was thirty seven years old with a college degree in accounting.  Tr. 21,

42, 174.  She has past work as an administrative assistant, general accounting clerk, accountant,

payroll clerk, waitress, accounts payable clerk, and house cleaner.  Tr. 20, 49-50, 187-195.

        Plaintiff's applications were denied at the initial and reconsideration levels.  Tr. 94-104.  At

Plaintiff's request, an administrative hearing was held on July 31, 2009.  Tr. 38-87.  Plaintiff was

present at this hearing and represented by counsel.  The ALJ rendered an unfavorable decision on

February 26, 2010, finding Plaintiff was not disabled within the meaning of the Act.  Tr. 9-22.

Subsequently, the Appeals Council denied Plaintiff's Request for Review on November 24, 2010,

-1-

thus making the ALJ's decision the final decision of the Commissioner.  Tr. 1-5.  Plaintiff now seeks

judicial review of that decision.

II.   **Medical History**

A.  <u>Summit Medical Center</u>

On March 1, 2008, Plaintiff presented to Summit Medical Center after falling and injuring

her left knee.  Tr. 231-240.  X-rays of Plaintiff's left knee revealed a fracture of the proximal left

tibia.  Tr. 240.  Plaintiff was given a knee immobilizer and referred to an orthopedist.  Tr. 232-233.

B.  <u>River Valley Musculoskeletal Center</u>

On March 4, 2008, Plaintiff was referred to Marvin E. Mumme, M.D., for evaluation of her

knee injury.  Tr. 224-229.  On examination, Plaintiff exhibited tenderness throughout her left knee

and had approximately 1+ effusion.  Tr. 228.  X-rays revealed a lateral tibial plateau fracture.  Tr.

228-229.  Dr. Mumme recommended surgery and informed Plaintiff that she was at high risk for

arthritis due to the nature of her fracture.  Tr. 228.

On March 14, 2008, Plaintiff underwent open reduction and internal fixation of her left knee

with plating and screws.  Tr. 247-249, 255-256, 359-360.  Post-surgical x-rays revealed good post

reduction alignment.  Tr. 250.  Following surgery, Plaintiff was doing fairly well, but reported

difficulty sleeping.  Tr. 224.  Extension and flexion were limited, but Plaintiff's wound was healing.

Tr. 224.  Dr. Mumme prescribed Lorcet and Ambien.  Tr. 224.  He instructed Plaintiff to avoid

weight bearing on the left and to use her brace, crutches, and a walker.  Tr. 224.  At a follow-up

appointment on April 18, 2008, Dr. Mumme admonished Plaintiff to use her walker and do no more

than protected weight bearing.  Tr. 253.  On examination, Plaintiff had -35 degrees of extension and

115 degrees of flexion.  Tr. 253.  She was placed in an extension cast.  Tr. 253.

On April 28, 2008, Plaintiff had a manipulation of her left knee performed due to very limited extension and flexion.  Tr. 382-384.  Following the procedure, a cylinder cast was applied. Tr. 382.

In June 2008, Dr. Mumme noted some improvement in extension and flexion.  Tr. 264. Plaintiff was able to walk around the house without her brace, but Dr. Mumme instructed her to continue wearing her brace outside.  Tr. 264.  Plaintiff's fracture appeared to be healing satisfactorily.  Tr. 264.  Dr. Mumme stated Plaintiff could not return to work for an additional six to twelve weeks, but noted she could progress with other activities as tolerated.  Tr. 264.

In July 2008, Plaintiff injured her leg attempting to get out of her husband's truck.  Tr. 432. On examination, Plaintiff had full flexion, but she was lacking 7 to 10 degrees of full extension.  Tr. 432.  X-rays revealed stable hardware and maintained joint spaces with no recurrent fracture or injury.  Tr. 432-433.

In November 2008, Plaintiff had a pain injection in her knee.  Tr. 418, 424-425.  On December 16, 2008, Plaintiff still lacked about ten degrees of full extension.  Tr. 418.  As a result, Dr. Mumme put Plaintiff in an extension cast.  Tr. 418.  He completed a Medical Source Statement ("MSS") in which he determined Plaintiff would be totally disabled for an additional one to three months.  Tr. 415-416.  Dr. Mumme found that Plaintiff could return to work on March 16, 2009. Tr. 416.

On December 29, 2008, Dr. Mumme noted that Plaintiff had not been the "most aggressive patient as far as her rehabilitation and requiring a great deal of pain medication."  Tr. 414.  At this time, Plaintiff's extension was limited to -15 degrees.  Tr. 414.

In February 2009, Plaintiff complained of low back pain.  Tr. 401.  Straight leg raising was negative and Plaintiff's motor function was intact.  Tr. 401.  Dr. Mumme noted a very slight limp on the left.  Tr. 401.  He ordered physical therapy twice a week for four weeks.  Tr. 347-353.  By the end of treatment, Plaintiff had met all her therapy goals and reported increased stability and minimal and infrequent pain.  Tr. 353, 511-517.  On February 18, 2009, Dr. Mumme signed a release for Plaintiff to return to work.  Tr. 396.  At this time, he stated Plaintiff's fracture had healed.  Tr. 396.

On May 29, 2009, due to continual pain and range of motion difficulties, Plaintiff underwent surgery for hardware removal.  Tr. 389-393, 463-468.  Dr. Mumme restricted Plaintiff to protected weight bearing for six weeks following surgery.  Tr. 391-392.  At a follow-up appointment on June 9, 2009, Dr. Mumme noted that Plaintiff was doing much better.  Tr. 560.  On examination, Plaintiff had excellent flexion of the knee and was working on her extension.  Tr. 560.  Dr. Mumme instructed Plaintiff to use a walker for three additional weeks and then switch to a cane for three weeks.  Tr. 560.  In July 2009, Dr. Mumme found that Plaintiff had markedly improved.  Tr. 559.  X-rays of Plaintiff's left knee revealed reasonably well-maintained joint space and a healed fracture.  Tr. 559.

### C. Agency Consultants

In a Physical Residual Functional Capacity ("RFC") Assessment dated July 8, 2008, Jerry Mann, M.D., determined Plaintiff could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, sit/stand/walk for about six hours in an eight-hour workday, and push or pull an unlimited amount, except as shown for lift/carry.  Tr. 268-275.  Dr. Mann found no postural, manipulative, visual, communicative, or environmental limitations.  Tr. 270-272.  He determined that Plaintiff would be capable of performing light work within a year following her surgery.  Tr.

275.

 D.  <u>AHEC Fort Smith</u>

 Plaintiff was treated by Bryan Clardy, M.D., for depression and perimenopausal syndrome.

Tr. 316-337.  Dr. Clardy prescribed Paxil for depression and referred Plaintiff to Perspectives

Behavioral Health Management ("Perspectives") for mental health treatment.  Tr. 334.

 E.  <u>Perspectives Behavioral Health Management</u>

 In August 2008, Plaintiff began treatment at Perspectives.  Tr. 280-313, 438-461, 562-566.

Plaintiff reported depression, anxiety, strained family relationships, situational stress, and attention

problems.  Tr. 294-313.  Plaintiff was taking Paxil and Strattera.  Tr. 305.  On examination, Plaintiff

was fully oriented, but appeared depressed and tearful.  Tr. 310.  Plaintiff's memory appeared intact,

and attention and concentration were normal.  Tr. 310.  Thought processes, thought content, and

insight were all normal.  Tr. 311.  Plaintiff denied any suicidal or homicidal ideation.  Tr. 311.

Plaintiff's intelligence was estimated to be within the average range.  Tr. 310.  Michael Steinbeck,

a licensed master social worker, diagnosed Plaintiff with depressive disorder, not otherwise specified

("NOS"), and estimated her Global Assessment of Functioning ("GAF") score at 41-50.  Tr. 311-

312.

 On October 31, 2008, Plaintiff was evaluated by Brent V. Witherington, M.D.  Tr. 289-293.

On examination, Plaintiff's mood was "okay" and her affect was euthymic.  Tr. 291.  Plaintiff's

memory was intact, and her insight and judgment were adequate.  Tr. 291.  Thought processes were

tangential throughout the interview and thought content appeared almost delusional.  Tr. 292.  Dr.

Witherington diagnosed Plaintiff with depressive disorder NOS and estimated her GAF score at 45.

Tr. 293.  He discontinued Strattera, but instructed Plaintiff to continue taking Paxil.  Tr. 292.  At a

follow-up appointment in November 2008, Plaintiff reported feeling worse since discontinuing Strattera. Tr. 281. She also reported mood swings, headaches, and increased anxiety. Tr. 281. On examination, Plaintiff's thought processes were logical, and her insight and judgment were intact. Tr. 281. Dr. Witherington instructed Plaintiff to continue Paxil and discussed adding low-dose Abilify. Tr. 281. He estimated Plaintiff's GAF score at 47 and noted that she had improved. Tr. 281.

On January 15, 2009, Plaintiff stated she was doing worse. Tr. 405. She reportedly ran out of Abilify and Klonopin, but admitted she was doing better when taking Abilify as directed. Tr. 405. She also reported being in an abusive relationship. Tr. 405. Dr. Witherington diagnosed Plaintiff with depressive disorder NOS and rule out bipolar disorder. Tr. 405. He determined Plaintiff's condition had deteriorated and estimated her GAF score at 40. Tr. 405. Dr. Witherington instructed Plaintiff to restart Klonopin and Abilify. Tr. 405. Plaintiff's therapist arranged shelter at the women's crisis center, where she stayed for seventy days. Tr. 72, 410-411. At a counseling session on January 23, 2009, Plaintiff was encouraged to attend day therapy. Tr. 406.

On March 26, 2009, Dr. Witherington completed a Medical Source Statement ("MSS"), in which he determined Plaintiff was markedly limited in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, make simple work-related decisions, interact appropriately with the general public, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Tr. 343-345. Dr. Witherington found moderate limitations in Plaintiff's ability to complete

a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and accept instructions and respond appropriately to criticism from supervisors.  Tr. 343-345.

Dr. Witherington noted that Plaintiff's depression and anxiety directly affected her daily functioning.  Tr. 345.  He stated that Plaintiff worried, was easily overwhelmed, displayed low mood with low motivation, and tired quickly.  Tr. 345.  He further noted that Plaintiff had difficulty focusing on tasks and making independent decisions.  Tr. 345.  Dr. Witherington determined Plaintiff had demonstrated some improvement over the past month and her mood was more stable, but she still had difficulty with daily tasks.  Tr. 345.  He estimated Plaintiff's GAF score at 40 and noted a good prognosis with extended treatment.  Tr. 345.

On June 10, 2009, Plaintiff reported that she was doing worse.  Tr. 439.  On examination, Plaintiff was tearful with a flat affect.  Tr. 439.  Thought processes were within normal limits, but Plaintiff's judgment and insight were limited.  Tr. 439.  Dr. Witherington determined that Plaintiff's condition had deteriorated and estimated her GAF score at 38.  Tr. 439.  On June 24, 2009, Plaintiff reported that she was no longer crying, but she was still depressed and upset.  Tr. 438.  At the time, Plaintiff was taking Zoloft, Wellbutrin, and Klonopin.  Tr. 438.  Dr. Witherington estimated Plaintiff's GAF score at 40.  Tr. 438.

On October 12, 2009, Plaintiff stated that she was "about the same."  Tr. 561.  She reported headaches, feelings of depression and hopelessness, concentration problems, and sleep difficulties, although her sleep had improved overall.  Tr. 561.  On examination, Plaintiff's memory, judgment, and insight were adequate.  Tr. 563.  She denied suicidal thoughts or ideation.  Tr. 563.  Dr. Witherington diagnosed Plaintiff with major depressive disorder, single, moderate, generalized

anxiety disorder, dependent personality disorder traits, and physical abuse of adult (victim). Tr. 565. He estimated Plaintiff's GAF score at 42 and instructed her to taper off of Wellbutrin due to headaches. Tr. 564-565. He also considered adding Effexor to Plaintiff's medications. Tr. 564.

## III.   Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities;

(3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## IV.    **ALJ's Determination**

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since March 1, 2008, the alleged onset date. Tr. 14-15. At step two, the ALJ found Plaintiff suffered from depression and fracture of the left tibia status-post surgery, which were considered severe impairments under the Act. Tr. 15. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 15-16.

At step four, the ALJ found Plaintiff had the RFC to perform less than the full range of sedentary work. Tr. 16-20. He determined Plaintiff could do no climbing of scaffolds, ladders, and ropes, and no crawling, kneeling, or balancing. Tr. 16-20. The ALJ found Plaintiff should avoid exposure to unprotected heights and dangerous equipment, and should do no sustained driving. Tr. 16-20. Mentally, the ALJ determined Plaintiff could engage in work involving only non-complex, simple instructions with little judgment and work that is routine, repetitive, and learned by rote with few variables. Tr. 16-20. Further, he found that Plaintiff's contact with others should be superficial

and incidental, and supervision should be concrete, direct, and specific.  Tr. 16-20.

With these limitations, the ALJ found Plaintiff could not perform her past relevant work.  Tr. 20.  However, after receiving vocational expert testimony, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[1]  Accordingly, the ALJ determined Plaintiff was not under a disability from March 1, 2008, the alleged onset date, through February 26, 2010, the date of the decision.  Tr. 22.

## V.   Discussion

On appeal, Plaintiff contends the ALJ erred by: (1) dismissing the opinions of her treating physicians; (2) improperly determining her RFC; and (3) discrediting her subjective complaints.  *See* Pl.'s Br. 9-20.  For the following reasons, the court finds that substantial evidence does not support the ALJ's decision.

The ALJ improperly dismissed Dr. Witherington's MSS.  A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in a clamant's record.  *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009); 20 C.F.R. § 404.1527(d)(2).  The record must be evaluated as a whole to determine whether the treating physician's opinion should be controlling.  *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).  A treating physician's evaluation may be disregarded where other medical assessments "are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."  *Id.* at 920-21 (quoting *Prosch*, 201 F.3d at 1013).  In any case, an ALJ

---

[1] The ALJ determined Plaintiff could perform the requirements of representative occupations such as inspector, of which there are 300 jobs regionally and 3300 jobs nationally, machine tender, of which there are 500 jobs regionally and 10,000 jobs nationally, and cutter and paster of press clippings and microfilm documents repairer, of which there are 500 jobs regionally and 32,000 jobs nationally.  Tr. 21-22, 80-83.

-10-

must always "give good reasons" for the weight afforded to the treating physician's opinion.  20

C.F.R. § 404.1527(d)(2).

> Regarding Dr. Witherington's MSS, the ALJ stated:
>
> Dr. Witherington apparently relied upon the claimant's self-reported problems without any actual psychiatric or psychological testing, and he reported that her prognosis was good with extended treatment.  Additionally, it appears that the claimant last saw Dr. Witherington on June 24, 2009, and his notes indicate her condition had improved at that time.  Additionally, the claimant testified that she prepares meals for her family and goes shopping and is able to get back and forth to the laundry facility within her apartment complex.  Accordingly, the undersigned gives little weight to Dr. Witherington's medical source statement.

Tr. 19.

The court recognizes that the ultimate issue of disability is one reserved to the Commissioner.

*See Brown v. Astrue*, 611 F.3d 941, 952 (8th Cir. 2010).  Furthermore, "treating physicians' opinions

are not medical opinions that should be credited when they simply state that a claimant can not be

gainfully employed."  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).  In this instance,

however, Dr. Witherington's assessment is not merely a conclusory medical opinion.  Dr.

Witherington treated Plaintiff consistently throughout the relevant time period and completed a

detailed MSS, in which he offered specific findings to support his conclusion.  Tr. 345.  In support

of his opinion, Dr. Witherington stated:

> [Plaintiff] is currently being treated for Major Depressive Disorder and Generalized Anxiety Disorder.  Her daily functioning is directly affected by depression and anxiety.  She becomes overwhelmed easily, worries, displays very low mood with low motivation and tires quickly.  It is difficult for her to focus on tasks and she has trouble making independent decisions.  Over the past month she has displayed some improvement in her level of functioning and her mood has become a bit more stable; however, it is still difficult for her to complete daily tasks.  Currently her GAF is 40, but her prognosis is good with extended treatment.

Tr. 345.

The ALJ's primary reason for dismissing Dr. Witherington's MSS was that he relied on Plaintiff's self-reported problems without any actual psychiatric or psychological testing. Tr. 19. However, depression is a complex and largely subjective illness that does not easily lend itself to diagnostic or other objective testing. Here, the length of treatment is a testament to Dr. Witherington's familiarity with Plaintiff's symptoms. Moreover, Dr. Witherington was the only physician to complete a mental RFC assessment. In fact, the court cannot find any evidence that a mental RFC assessment was completed at the agency level. Because Dr. Witherington was the *only* physician to report on Plaintiff's mental impairments, disregarding his opinion left no medical evidence in the record on the issue. *See DiMasse v. Barnhart*, 88 Fed. Appx. 956, 957 (8th Cir. 2004); *see also Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001) (reversible error for ALJ not to order consultative examination where such evaluation is necessary to make informed decision).

Finally, the ALJ noted that Plaintiff's condition had improved as of June 24, 2009. Tr. 19. However, a glance at Dr. Witherington's treatment notes reveal that Plaintiff had merely improved from a prior deterioration of her condition. Tr. 438-439. Contrary to the ALJ's findings, Dr. Witherington's overall notes and GAF scores reflect that Plaintiff's depression was not controlled or improved for any length of time. For the aforementioned reasons, the courts finds that substantial evidence does not support the ALJ's determination. As such, this case is remanded for further development of the record concerning Plaintiff's mental impairments.

## VI.  <u>Conclusion</u>

Accordingly, the undersigned concludes that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). This matter should be remanded to the Commissioner for reconsideration of the issue of Plaintiff's RFC, based on all relevant evidence,

including medical records, opinions of treating medical personnel, and Plaintiff's description of her own limitations.  *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).

IT IS SO ORDERED this 22nd day of February 2012.


/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE